FARREL et al. v. UNITED VERDE COPPER CO.

(Circuit Court, S. D. New York. January 16, 1903.)

**1. PATENTS—INVENTION—CONVERTER FOR COPPER ORES.**

The Manhes patent, No. 470,644, for a converter for copper ores, covering a process for reducing copper matte and a converter for carrying out such process, which consists in forcing radial jets of air into the matte while in a molten state to burn out the foreign substances, the chief or only feature of novelty claimed being the method of removing the chilled copper which forms around and obstructs the inner ends of the blast holes or tuyeres by means of holes through the outer wall, having removable plugs, through which an iron bar may be passed, is void for lack of novelty in view of the prior art, both as to the process and the converter.

In Equity. Suit for infringement of letters patent No. 470,644, for a converter for copper ores, granted to Pierre Manhes March 8, 1892. On final hearing.

H. A. Seymour, for complainants.
Henry G. Atwater, for defendant.

WALLACE, Circuit Judge. This is an action in equity to restrain infringement of two patents to Pierre Manhes, of Lyons, France, for improvements in the art of smelting copper—No. 456,516, dated July 21, 1891, for "process of smelting copper," and No. 470,644, dated March 8, 1892, for "converter for copper ores." At the hearing of the cause the first patent was abandoned and withdrawn from the consideration of the court by the complainants. It is to be regretted that this had not been done at an earlier stage in the suit, before the introduction of the voluminous proofs in regard to its validity and its infringement. Indeed, it is a matter of surprise that it was ever brought forward as the basis of an infringement suit in equity. Its term had expired before the commencement of the suit, and the court therefore had no jurisdiction, and the remedy for infringement was cognizable only in a court of law. The subject-matter had been patented in nearly every country of the civilized world, and the terms of several of the foreign patents had expired, thus ending the term of the United States patent some considerable time before the suit was brought.

The second patent contains two claims, each of which is in controversy, the validity and infringement of each being contested by the defendant. The application for this patent was filed December 2, 1885. In its preamble the patent recites that the improvements to which it relates had been patented in Great Britain October 13, 1883. The claim of the British patent reads as follows:

"A Bessemer converter, or similar furnace, provided with tuyeres or air passages arranged above the space to be occupied by the metal, and in combination with an air-belt provided with orifices opposite the tuyeres, substantially as and for the purpose specified."

The specification of this patent states:

"The arrangement of these parts as described permits the ready removal of any obstruction from any of the tuyeres by means of a rod or bar passed through the side orifices provided in the air-belt."

In the application for the patent in suit, as appears by the file wrapper, the invention first claimed was this:

"The method herein specified of insuring uniformity in the blast in converters for treating copper matte, consisting in driving into and through the tuyere holes successively a bar for removing the chilled copper around the inner end of the tuyere, substantially as specified."

That claim was rejected by the Patent Office upon the statement that it was "universally practiced in the art of smelting ores to clear the tuyeres by inserting bars or rods in the manner described by applicant." Thereupon the application was amended as follows:

"I am aware that provision has been made for clearing blast holes in blast furnaces, but this apparatus is not adapted to the conversion of copper matte, and my process renders the operation of converting copper matte practical and efficient, whereas the efforts to reduce copper matte in blast furnaces have heretofore failed in consequence of the blast holes becoming obstructed."

Thereupon the application was reconsidered, and rejected again by the Patent Office, upon the statement as follows:

"It being common practice to free the tuyere openings of blast and cupola furnaces by inserting bars or rods, it must be held that the application is without patentable novelty."

By an amendment to the application, filed June 16, 1887, a new claim was added as follows:

"(2) The converter having an air-belt around it, and tuyere holes opening inwardly from the same, and corresponding openings through the outer wall of the air belt, in combination with removable plugs introduced into the latter openings, whereby drift bars can be passed rapidly through the tuyere holes for removing the chilled copper or matte at the tuyere holes, without interfering with the blast, substantially as set forth."

The examiner of the Patent Office refused to allow the claim, principally upon the ground that the apparatus sought to be covered by the proposed amendment was a different invention from the original process claimed. He also suggested to the applicant that the construction sought to be covered was very old and common, and cited a number of patents as references. September 9, 1891, the applicant applied for special permission to introduce further amendments to the claims. That permission was granted, and the claims were amended to read as they now appear in the patent. The examiner again rejected the claims, citing a number of references against their novelty, and thereupon the Commissioner of Patents seems to have intervened in the proceeding without a formal appeal having been taken to him, and November 14, 1891, the application was allowed.

A brief reference to the prior art is desirable before entering upon a detailed consideration of the patent. In the treatment of sulphurate copper ores, the regulus, or the matte in its liquid state, is placed in a converting furnace, which has been heated to a sufficient temperature, and then subjected to a process of combustion and oxidation of the sulphur and iron by the forced passage of a blast of air under sufficient pressure to traverse the mass.

In 1866 Raht obtained a patent in this country for a process of treating ores, among them copper, by forcing the air through the liquid matte, in contradistinction to the process described in Besse-

mer's patent for treating iron ores by forcing air through the ore. His process obviously contemplated the employment of a Bessemer converter, and the manipulation of the converter and the regulation of the air blast according to the Bessemer method. In such converters, as in some other converters of the prior art, the air-blast is introduced from a wind-box (commonly spoken of as a "wind-belt") encircling the outer walls of the furnace, from which channels, known as "tuyeres," running through the walls, communicate with the interior of the furnace. In some instances these tuyeres projected horizontally through the walls of the furnace, in others they projected vertically. These furnaces were generally provided with peepholes, having stoppers, for the purpose of viewing the interior of the furnace through the tuyeres, and to facilitate the introduction of a rod for cleaning out the tuyeres and removing obstructions therein. One form of Bessemer converter had a vertical axis, and was designed to be blown in a position vertical, or nearly so. Another form of Bessemer converter had a horizontal axis, in position for blowing when the tuyeres were beneath the bath. The Swedish patent to Manhes of April 15, 1884, describes a cylindrical converter having a horizontal axis designed for the smelting of various metals, among others for the smelting of copper. It is supplied lengthwise on one side with a line of tuyeres, each of which at one end reaches the inside of the furnace, and at the other communicates with the wind-box. In the wall of the wind-box opposite the tuyeres is a line of holes "through which one can clean the former tuyeres when necessary, otherwise the holes are closed with plugs."

The patent in suit, after the preamble reciting that the improvements to which it relates had been patented in Great Britain, contains this recital:

"Converters have heretofore been made in which the blast enters through one of the trunnions and passes by a pipe to an air-belt around the lower part of the converter, and from the air-belt tuyeres or orifices pass through the lining of the converter, and in some instances openings have been provided in the outer wall of the air-belt, into which pieces of glass have been inserted, and sometimes movable screw-cap pieces have been applied. In the conversion of iron into steel the air acting upon the carbon increases the heat of the mass in the converter; but when the copper matte is introduced into the converter the action of the air upon the same is to burn out the impurities and separate the copper; but this copper speedily becomes chilled by the action of the air, and the tuyeres or blast holes become obstructed, and the operation of the converter is thereby delayed on account of an insufficient supply of air."

The specification then continues:

"My invention relates to the method or process pursued in treating copper matte for its conversion into metallic copper; and it consists in driving into the melted mass within the converter from time to time the copper which becomes chilled at the end of the tuyeres, so that the blast is maintained in full force and the rapidity of the operation greatly promoted."
"In carrying out my invention I provide a converter substantially as shown in the accompanying drawings, in which—
"Figure 1 is a vertical section of the converter, and Fig. 2 is a horizontal plan through the air-belt at the line.  *  *  *"

The specification then describes the converter, which is illustrated by the drawings, as follows:

"The converter A is of ordinary size and shape, and it is supported by the trunnions B in suitable frames, and the air is supplied through one of the trunnions and the pipe E to the air-belt E, that surrounds the lower part of the converter, and there are tuyere-holes or openings C from the air-belt through the case and lining of the converter. In the outer wall of the air-belt there are openings with removable plugs F, which openings are opposite to and in line with the tuyere-holes C. These tuyere-holes C may be all around the converter or only one side, according to the shape or character of the converter. After the copper matte in a melted condition has been sup-plied into the converter the blast is applied and the converter rotated in such a manner that the blast will pass into the matte for the purpose of burning out the foreign substances and reducing the matte to copper, and the attendant from time to time removes the plugs F in succession to ascertain whether the tuyere-holes C are open and the blast passing freely into the matte. If there is an obstruction an iron bar about the size of the tuyere-hole is entered and driven through the tuyeres to break away and carry into the mass of matte and copper the chilled metal that has accumulated around the inner end of the tuyeres, thereby opening up the tuyeres whenever necessary for securing the full action of the blast."

The patent then contains the following disclaimer:

"I am aware that provision has been made for cleaning the blast-holes in blast-furnaces; but this apparatus is not adapted to the conversion of copper matte, and my process renders the operation of converting copper matte prac-ticable and efficient, whereas the efforts to reduce copper matte in converters have heretofore failed in consequence of the blast-holes becoming obstructed."

The claims are as follows:

"(1) The process of reducing commercial or pig copper from copper matte, consisting in charging the matte in a molten state into a converter, forcing radial jets of air uniformly and continuously through the charge of molten matte and causing the heat produced by the combustion of the sulphur and iron in the matte to separate the foreign substance from the metallic copper contained therein, allowing the metallic copper as it is separated from the matte to settle below the action of the air-jets and removing the chilled me-tallic copper as it forms around and obstructs the inner ends of the tuyeres, and thereby insure the maintenance of a continuous and practically uniform distribution of air throughout the molten matte, and continuing the operation until the metallic copper contained in the charge has been separated there-from and then removing the copper from the converter, substantially as set forth.

"(2) A converter for reducing commercial or pig copper from copper matte, having a wind-belt encircling the converter above its bottom, a series of tuyeres extending through the lining of the converter and communicating at their outer ends with the wind-belt, and removable stoppers located in the outer wall of the wind-belt and in alignment with each one of said tuyeres, whereby a drift-bar may be inserted successively through said tuyeres to re-move obstructions from their inner ends, substantially as set forth."

Inasmuch as no description is given of the process claimed, except that part of it which consists "in removing the chilled metallic cop-per as it forms around and obstructs the inner ends of the tuyeres," it must be presumed that all else was well known to those skilled in the art, and therefore did not require description to that part of the public to whom the specification of a patent is addressed. It follows that the novelty of the first claim depends upon the fact whether that part of the process was new. If it had been customary to re-move the obstructing matter from the inner ends of the tuyeres, the claim covers nothing more than the use or function of the particular arrangement of tuyeres and holes with stoppers described in the sec-ond claim.

It will be observed that the claim in the original application for the patent specifying this feature of novelty was rejected by the Patent Office. The patentee acquiesced in this rejection by amending the claim. He thereby admitted that this feature of novelty was not of itself sufficient to sanction a patent. If all the other steps of the process were old and well known, it is not readily conceivable how the use of another, which was not new, and, as the examiner of the Patent Office said, "had been universally practiced in the art of smelting ores," can be the basis of a valid claim.

It is not necessary, however, to rest the conclusion that the claim is invalid upon any technical ground. The fact that the metallic copper, when separated from foreign substances in the matte during the later stages of such a process as is described in the claim, will congeal, thereby necessitating to a greater or less extent the freeing of the tuyeres, is self-evident. If evidence to establish the fact were necessary, it is supplied by the English patent to Lake of March 26, 1884, in which it is pointed out as "obvious" that, when the smelting operation has exhausted the combustible matter in the charge "the copper is cooled and solidified by contact with the air"; and, again, "that there is a tendency, especially towards the close of the operation, for masses of congealed matte to form around the tuyeres."

It remains to consider the second claim. If it is true that the wind-belt is usually interposed between the tuyeres and the furnace, that in operating the converter it is necessary at times to clean out the tuyeres by inserting a rod or bar therein, and that it was old in the prior art to have holes in the outer wall of the wind-belt in alignment with the tuyeres for the purpose of doing this, the patentable novelty of the claim can only reside in the removable stopper of the claim. The disclaimer in the patent admits that "in some instances openings have been provided in the outer wall of the air-belt, into which pieces of glass have been inserted, and sometimes movable screw-cap pieces have been applied."

The British patent to Clark of May 9, 1877, describes a furnace surrounded by a blast-chamber, whence the blast is distributed in the furnace tuyeres, the number and dimensions of which vary according to the quantity of metal to be melted. The blast-chamber (wind-belt) "is provided with sight holes, H, opposite the several tuyeres, each closed by a sliding door fitted with blue glass, through which when closed the progress of the operation may be watched, and when opened the tuyeres cleared." This is probably the reference first contemplated by the disclaimer.

The United States patent to Bessemer of July 25, 1865, shows a converter surrounded by a wind-belt communicating with horizontal tuyeres. Opposite the tuyere is a screw-plug "for the purpose of admitting a plug or rod for the purpose of clearing out the tuyere should it become obstructed when in use."

The United States patent to Stribling of April 11, 1877, shows a furnace surrounded by an annular air space communicating with horizontal tuyeres in which there is a hole in the outer wall of the air-belt opposite each tuyere, "usually kept plugged up when the furnace is in operation. This hole, when opened, allows the operator

to view the interior of the furnace, and also permits the insertion of a clearing bar or rod to remove obstructions from the mouth of the tuyere should it become stopped."

All these prior patents show the movable stoppers of the claim. Whether they are removable as readily as those contemplated by the patent is merely a matter of conjecture, as the specification is silent as to the means or mode by which the stopper is removed. The Patent Office was abundantly justified in its first rejection of the claim for want of novelty.

·In conclusion it is proper to say that, however much the patentee may have contributed by his other inventions to the improvement of the art of smelting copper, those things which are the subject of the present patent seem so destitute of merit ·as to excite surprise at the action of the Patent Office in finally allowing his application.

The bill is dismissed, with costs.